```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
In re                                     :
                                          :
MILLENIUM SEACARRIERS, INC., et al.,      :
                                          :
              Debtors.                    :
                                          :
-----------------------------------------X    04 Civ. 6482 (DLC)
                                          :
JAMAICA SHIPPING COMPANY LIMITED, a       :
British Virgin Islands limited company,   :
                                          :
              Plaintiff-Appellee,         :
                                          :
         -v-                              :
                                          :
ORIENT SHIPPING ROTTERDAM, B.V.,          :
                                          :
              Defendant-Appellant.        :
                                          :
-----------------------------------------X
                                          :
In re                                     :
                                          :
MILLENIUM BALTIC, INC.,                   :
                                          :
              Debtor.                     :
                                          :
-----------------------------------------X    05 Civ. 2711 (DLC)
                                          :
ORIENT SHIPPING ROTTERDAM, B.V.,          :
                                          :
              Plaintiff-Appellant,        :
                                          :
         -v-                              :    OPINION AND ORDER
                                          :
JAMAICA SHIPPING COMPANY LIMITED,         :
                                          :
              Defendant-Appellee.         :
                                          :
-----------------------------------------X
```

Appearances:


For Jamaica Shipping Company Limited:

Anthony Princi
Brian Goldberg
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103

James H. Hohenstein
Francesca Morris
Holland & Knight LLP
195 Broadway
New York, New York 10007


For Orient Shipping Rotterdam, B.V.:

Jeremy J.O. Harwood
Brian S. Tretter
Healy & Baillie, LLP
61 Broadway
New York, New York 10006


For Millenium Baltic, Inc.:

Christopher F. Graham
Louis Curcio
Thacher Proffitt & Wood LLP
Two World Financial Center
New York, New York 10281

DENISE COTE, District Judge:

These related bankruptcy appeals raise the questions of, among other things, whether a Bankruptcy Court has inherent jurisdiction to hear an adversary action to clarify the meaning of its own order involving the sale of a debtor's assets, and when the dismissal of a bankruptcy case requires the dismissal of

related adversary proceedings.  For the following reasons, case number 05 Civ. 2711 is dismissed, and case number 04 Civ. 6482 is affirmed on the question of subject matter jurisdiction, and is remanded to the Bankruptcy Court for further findings of fact and conclusions of law to address the likelihood of Jamaica Shipping Company Limited's success on the merits.

## BACKGROUND

The facts of this case are procedurally complex, and require exposition at some length for the purpose of clarity.  Millenium Seacarriers, Inc. ("Seacarriers"), prior to filing for bankruptcy, was an international shipping company specializing in surface transportation via trans-oceanic cargo vessels. Seacarriers owned and operated its vessels through subsidiary companies (the "Subsidiaries"), each of which typically owned one vessel.  One such subsidiary was Millenium Baltic, Inc. ("Baltic"), a Cayman Islands company which owned the Liberian-flag cargo vessel Millenium Baltic (the "Vessel").

In order to raise capital in 1998, Seacarriers issued first priority ship mortgage notes having an aggregate principal amount at maturity of $100 million.  Pursuant to an exchange offer, those notes were exchanged for certain first priority ship mortgage exchange notes (the "Notes") issued by Seacarriers, having the same aggregate principal amount at maturity, as provided for in a July 15, 1998 indenture in favor of Allfirst Bank ("Allfirst") as Indenture Trustee.  The Notes were

guaranteed by the Subsidiaries and the guarantees were secured

by, among other things, first priority ship mortgages

("Mortgages") on various vessels including the Vessel.[1]  Wayland

Investment Fund, LLC ("Wayland") subsequently purchased in the

secondary market and beneficially owned 85% of the Notes.

Oppenheimer Funds beneficially owned the remaining 15% of the

Notes.

On January 15, 2002, Seacarriers, through the Subsidiaries,

filed for relief under Chapter 11 of Title 11, United States

Code.  Baltic, among other Subsidiaries, filed an individual

petition for Chapter 11 relief.  On February 28, the Subsidiaries

filed an amended motion to sell all of their vessels (the "Sale

Motion").  As part of the Sale Motion, then-existing

charterparties[2] would be assigned to the successful bidders for

the vessels.  To this end, the Subsidiaries filed an undated List

of Executory Contracts and Leases To Be Assumed and Assigned in

Connection with the Sale of Substantially All of the Debtors'

Assets Free and Clear of Liens, Claims and Interests ("List").

On the List, the charterer identified for Baltic is Orient

Shipping Rotterdam, B.V. ("Orient").  The List states that the

---

[1]  The Notes were registered with the Securities and
Exchange Commission pursuant to applicable law.

[2]  A charterparty is defined as "[a] contract by which a
ship, or a principal part of it, is leased by the owner, esp. to
a merchant for the conveyance of goods on a predetermined voyage
to one or more places or for a specified period of time; a
special contract between the shipowner and charterer, esp. for
the carriage of goods at sea."  Black's Law Dictionary (8th ed.
2004).

charter expires on "November 8, 2002, plus or minus 15 days."

This is consistent with a charterparty for the Vessel dated May

8, 2001 ("May Charter") that stated that Baltic would lease the

Vessel to Orient for "18 months - 15 days more or less Charterers

option."

On March 21, 2002, counsel for Orient sent a fax to counsel

for Wayland and for Baltic stating the following:

> We represent Orient . . . which under Charter dated
> December 31, 2001 is the Charterer of the [Vessel].   It
> is our understanding that it is proposed that the
> Charter be assumed and assigned to the successful
> bidder at the purported March 27, 2002 auction.   In
> this respect, we are advised that <u>the advice of the
> hire rate may be incorrect and the charter is
> incorrectly identified</u>.   A copy is attached hereto.
> Kindly ensure that any assignee of the Charter is aware
> of these terms and makes proper showing of ability to
> perform.

(Emphasis supplied.)   The fax attached a copy of the December 31,

2001 charterparty ("December Charter").   The May Charter states

that Orient "shall pay for the use and hire of the said Vessel at

the rate of US$5,000 daily," while the December Charter states

that the daily rate is US$2,500 for the first forty days of the

lease, and US$3,500 thereafter.   Both Charters contain

arbitration clauses, although the May Charter places the situs of

arbitration in New York, while the December Charter places it in

London.

On March 22, Orient filed an objection to the Sale Motion

that referred to the December Charter in the preliminary

statement, but did not otherwise raise the issue that there could

be confusion regarding which Charter would be assigned in the

event of the Vessel's sale.  On March 27, at the Sale Motion

Hearing, Orient did not object that the December Charter, not the

May Charter, was the contract governing the charter of the

Vessel.  At the conclusion of the Sale Motion Hearing, the

Bankruptcy Court, Hon. Cornelius Blackshear, granted the Sale

Motion and issued the Sale Order, ordering the sale of

Millenium's ships, including the Vessel, free and clear of all

liens and encumbrances except those that the Bankruptcy Court

determined were superior in right to the liens of the purchaser.

Allfirst, the Indenture Trustee, was the only bidder for eighteen

of the ships, including the Vessel.

The Sale Order directed the Subsidiaries to

assume and assign to the purchaser(s) each of the
Assigned Contracts and Leases in the Contract/Charter
Lists . . . provided, however, that the Assigned
Contracts and Leases shall be assigned subject to such
cure amounts and rights, if any, held by any party
listed on Schedule B attached hereto (each an
"Objecting Contract Party") that the Court finds, after
due notice and a hearing, is a valid cure amount.

(Emphasis in original.)  The Sale Order states that

[e]xcept as otherwise expressly set forth herein, the
cure amounts in respect of the Assigned Contracts and
Leases (the "Cure Amounts") set forth in the (i) List
of Executory Contracts and Leases to be Assumed and
Assigned in Connection with the Sale of Substantially
All of the Debtors' Assets Free and Clear of Liens,
Claims and Interests, (ii) Second Notice of Inclusion
of Additional Assets in Sale, and (iii) Third Notice of
Inclusion of Additional Assets (collectively, the
"Contract/Charter Lists"), are the sole amounts
necessary to cure all defaults, and to pay all
established actual or pecuniary losses that have
resulted from such defaults under the Assigned
Contracts and Leases.

(Emphasis supplied.)

6

The Sale Order also provided that

[t]he Assigned Contracts and Leases listed in the
Contract/Charter Lists, as well as any executory
contracts entered into after the filing of the
Contract/Charter Lists but before the Auction, shall,
upon assignment to the purchaser(s), be deemed to be
valid and binding and in full force and effect and
enforceable in accordance with their respective terms,
without giving effect to any oral or written amendment,
waiver, supplement or other modification thereto not
reflected in the supplemental paper to be submitted in
support of this Motion.

The Sale Order further provided that

Except as otherwise expressly set forth herein, no
purchaser is assuming nor shall it in any way
whatsoever be liable or responsible, as a successor or
otherwise, for any liabilities, debts, commitments or
obligations (whether known or unknown, disclosed or
undisclosed, absolute, contingent, inchoate, fixed or
otherwise) of the Debtors, or any liabilities, debts,
commitments or obligations in any way whatsoever
relating to or arising from the sale of Assets or the
Debtors' operations or use of the sale Assets,
including, without limitation, the Assigned Contracts
and Leases, on or prior to the Closing or any such
liabilities, debts, commitments or obligations that in
any way whatsoever relate to periods on or prior to the
Closing or are to be observed, paid, discharged or
performed on or prior to the Closing . . . , or any
liabilities calculable by reference to the Debtors or
their assets or operations, or relating to continuing
conditions existing on or prior to the Closing, which
liabilities, debts, commitments and obligations are
hereby extinguished insofar as they may give rise to
successor liability, without regard to whether the
claimant asserting any such liabilities, debts,
commitments or obligations has delivered to the
purchaser(s) a release thereof.  Without limiting the
generality of the foregoing, no purchaser(s) shall be
liable or responsible, as a successor or otherwise, for
the Debtors' liabilities, debts, commitments or
obligations, whether calculable by reference to the
Debtors or their operations, or under or in connection
with . . . any liabilities, debts, commitments or
obligations of any kind under any executory contract or
real property lease that is not an assigned contract or
lease . . . .

The Sale Order went on to provide that

> [e]xcept as otherwise expressly set forth herein, no person or entity . . . shall assert by suit or otherwise against any purchaser or their successors in interest any claim that they had, have or may have against the Debtors, or any liability, debt or obligation relating to or arising from the sale Assets, including, without limitation, any liabilities calculable by reference to the Debtors or their assets or operations, and all persons and entities are hereby enjoined from asserting against any purchaser in any way any such claims, liabilities, debts or obligations.

Finally, the Sale Order provided that the Bankruptcy Court "retains jurisdiction to: (i) enforce and implement the terms and provisions of the sale and each of the agreements executed in connection therewith; . . . (iv) compel payment of the Cure Amounts; (v) resolve any disputes, controversies or claims arising out of or relating to the sale; and (vi) interpret, implement, and enforce the provisions of this Sale Order."

After Allfirst as Indenture Trustee purchased the Vessel and received assignment of the May Charter, it subsequently conveyed the Vessel and the applicable charterparty with Orient -- either the May Charter or the December Charter -- to Jamaica Shipping Company Limited ("Jamaica"), a British Virgin Islands cargo shipping company that was created by Wayland's corporate parent, Cargill Financial Services Corporation ("Cargill"), for the express purpose of receiving the Vessel. An adversary proceeding followed the execution of the Sale Order to address objections from a wide variety of parties, including Orient, that had been raised against the Sale Order. In its April 29 response to the objections, Wayland and Allfirst "den[y] that the charter party

to be assumed and assigned herein is dated December 31, 2001, as the date of the charter party to be assumed and assigned herein is May 8, 2001."

Orient, relying on the lower charter rate in the December Charter, refused to pay the $5,000 daily rate under the May Charter. Jamaica commenced this adversary proceeding (the "Adversary Action") in the Bankruptcy Court on May 22 seeking a determination as to whether it had assumed the May or December Charter.

Orient commenced an arbitration proceeding in London against Wayland, Allfirst, and later Jamaica and Baltic, based on the arbitration clause of the December Charter. Orient claimed that Jamaica was breaching the December Charter by withholding the Vessel from Orient's service, including $28,000 of fuel oil Orient had purchased and placed on board the Vessel. In conjunction with this arbitration, Orient arrested the Vessel in Tunisia for security on June 14. It released the Vessel after Jamaica obtained a bank guarantee for $550,000 to secure Orient's claim. On June 21, Orient filed a motion with the District Court to withdraw the reference to the Bankruptcy Court. A hearing on this motion was scheduled for July 24.

Orient filed its answer in the Adversary Action on June 28. Jamaica filed a motion for a preliminary injunction in the Adversary Action on July 9 to compel Orient to withdraw its notice of arbitration, withdraw the London arbitration proceedings and Tunisian vessel arrest proceedings, pending a

final adjudication of the Adversary Action.

On July 12, Orient brought an emergency application in the District Court seeking an expedited hearing on its motion to withdraw the reference to the Bankruptcy Court in order to avoid the imposition of a preliminary injunction. That same day, Jamaica filed a motion for a Temporary Restraining Order ("TRO") in the Bankruptcy Court, seeking to restrain Orient from continuing any other legal proceedings in connection with the Vessel. The Bankruptcy Court held a telephone conference later that day, and granted Jamaica's request for a TRO. The District Court denied Orient's application for an emergency hearing on July 16, stating that any order of the Bankruptcy Court could be vacated if the District Court found withdrawal of the reference to be proper.

The Bankruptcy Court held a preliminary injunction hearing on July 22, 2002. The parties dispute the events relating to discovery during the intervening days between the TRO hearing and the preliminary injunction hearing. Orient claims that Jamaica's witnesses refused to comply with Orient's Rule 30(b)(6) deposition notice and various subpoenas, while Jamaica claims that Orient's notice and subpoenas were generated immediately prior to the testimony dates, which did not permit Jamaica time to comply, and that the subpoenas were improperly served. In any event, at the hearing, the Bankruptcy Court on several occasions extended an offer to Orient to adjourn the hearing so that Orient could call the witnesses from whom it sought testimony, but

10

Orient declined.  At the conclusion of the hearing, the

Bankruptcy Court granted the motion for a preliminary injunction

and reserved the right to issue a written opinion "if anybody

takes an appeal."

Jamaica submitted a proposed injunction order on July 24.

Orient objected the following day, claiming that the order failed

to comply with Rule 65(b), Fed. R. Civ. P.  Also on July 25, the

District Court entered an order denying Orient's motion to

withdraw the reference to the Bankruptcy Court.  The Bankruptcy

Court signed the injunction order on July 31, 2002

("Injunction").  The Injunction provides:

> The Defendant [Orient] is hereby enjoined and
> prohibited, pending a final adjudication of this [sic]
> adversary proceedings, from (i) arresting the [Vessel];
> and (ii) taking any action or commencing or continuing
> any proceeding before any tribunal, judicial or
> otherwise, in any jurisdiction, with the exception of
> Defendant's Motion to Withdraw the Reference currently
> pending before the District Court for the Southern
> District of New York, which related to the subject
> matters of this adversary proceeding.

Orient appealed the injunction order to the District Court

on August 2.  The District Court held oral argument on August 30

where Orient claimed for the first time that the Bankruptcy Court

lacked jurisdiction over the Adversary Action.  In an order of

September 11, the District Court left the Injunction in place and

remanded the matter to the Bankruptcy Court for findings of fact

and conclusions of law to supply the reasoning behind the

Injunction.  The District Court also declined to address whether

the Bankruptcy Court had subject matter jurisdiction, stating

that it would be necessary for the Bankruptcy Court to address this issue in the first instance on remand.

Orient appealed the District Court's decision on the Injunction, as well as its motion to withdraw the reference. On December 17, the Second Circuit issued a Summary Order affirming the District Court and remanding the action to the Bankruptcy Court. See In re Millenium Seacarriers, Inc., 54 Fed. Appx. 333, 337 (2d Cir. Dec. 17, 2002). In the Summary Order, the court affirmed the District Court's decision to leave the Injunction intact because it "appears necessary to protect the Bankruptcy Court's jurisdiction." Id. at 336. The court directed the Bankruptcy Court to issue a written or oral decision explaining its reasons for the Injunction and to make a finding on its own subject matter jurisdiction. Although the District Court had suggested that the Bankruptcy Court consolidate its findings on remand with a trial on the merits of the underlying dispute, the Second Circuit did not make this suggestion, instead "urg[ing] the Bankruptcy Court to issue the requisite findings and conclusions as expeditiously as possible" and instructing the Bankruptcy Court "to consolidate its findings with a trial on the merits only if such consolidation will not delay its ability to carry out this task." Id. at 337. The court also guided the Bankruptcy Court by instructing it to address eight legal issues in making its findings and conclusions on remand.

Following briefing, the Bankruptcy Court issued its unpublished Remand Opinion on February 16, 2004, providing

12

reasons for the Injunction and addressing the legal issues identified in the Summary Order.  Orient improperly appealed the Remand Opinion directly to the Second Circuit, and subsequently brought this action ("Remand Appeal") in this District.  The action was sent to the District Court Judge who had presided over the proceedings in 2002, for a determination as to whether it was related to the prior action in this District.  After that District Judge declined it as unrelated, it was randomly assigned to this Court.  Pursuant to a Memorandum Endorsement of December 7, the parties filed the motion papers they had originally filed in the Second Circuit, and briefing was complete on December 14.

On January 12, 2005, Seacarriers filed a "Notice of Settlement of an Order Partially Resolving the United States Trustee's Motion to Dismiss Chapter 11 Cases, and Dismissing Subsidiary Debtor Chapter 11 Case Nos. 02-10182 through 02-10200" ("Notice of Settlement").  The Notice of Settlement called for objections to the proposed orders by January 21.  Orient did not object.  On January 28, the Bankruptcy Court issued an Order of Dismissal in the bankruptcy proceedings for a number of Subsidiaries, including Baltic.  This Order of Dismissal ordered among other things

> for good cause having been shown, that notwithstanding the dismissal of the captioned Case, this order of dismissal shall not cause a dismissal of, and shall have no effect on this Bankruptcy Court's jurisdiction regarding, the adversary proceedings commenced in this Court and identified on the attached schedule.

The schedule included the Adversary Proceeding.

13

Orient filed a Notice of Appeal of the dismissal of the bankruptcy proceedings ("Dismissal Appeal") on February 1. The parties requested that the Dismissal Appeal be consolidated with the pending Remand Appeal. This Court therefore accepted the case as related to the Remand Appeal. Briefing on the Dismissal Appeal was completed on May 23. The parties subsequently notified this Court that an appeal of a related Subsidiary action was pending in the Second Circuit and would likely address some of the issues involved in the Remand and Dismissal Appeals. On August 11, the Second Circuit issued an Opinion in <u>In re Millenium Seacarriers, Inc.</u>, 419 F.3d 83 (2d Cir. 2005).

In the Dismissal Appeal, Orient claims that the provision of the Order of Dismissal that purports to retain jurisdiction over the Adversary Proceeding is improper because the Adversary Proceeding is not related to the Baltic bankruptcy, and because the dismissal of a bankruptcy case should result in the dismissal of related proceedings. In the Remand Appeal, Orient claims among other things that the Bankruptcy Court does not have subject matter jurisdiction over the Adversary Action, because it does not meet the tests for "core" or "related to" jurisdiction, and that the Bankruptcy Court does not retain "inherent jurisdiction" to interpret its own orders.

**DISCUSSION**

Subject Matter Jurisdiction

"Notwithstanding any Act of Congress that confers exclusive
jurisdiction on a court or courts other than the district courts,
the district courts shall have original but not exclusive
jurisdiction of all civil proceedings arising under title 11, or
arising in or related to cases under title 11."  28 U.S.C. §
1334(b).  District courts may refer "any or all cases under title
11 and any or all proceedings arising under title 11 or arising
in or related to a case under title 11" to bankruptcy judges.  28
U.S.C. § 157(a).  See also Mt. McKinley Insurance Co. v. Corning
Inc., 399 F.3d 436, 447-48 (2d Cir. 2005); Luan Inv. S.E. v.
Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223,
228-29 (2d Cir. 2002); U.S. Lines, Inc. v. Am. S.S. Owners' Mut.
Prot. and Indem. Ass'n (In re U.S. Lines, Inc.), 197 F.3d 631,
636-37 (2d Cir. 1999).  The scope of the bankruptcy judge's
authority depends on whether the bankruptcy proceeding is "core"
or "non-core."  28 U.S.C. § 157.

> In a core proceeding, the bankruptcy court has
> comprehensive power to hear and determine all cases and
> may enter appropriate orders and judgments subject to
> review by the district court.  A bankruptcy court
> retains post-confirmation jurisdiction to interpret and
> enforce its own orders, particularly when disputes
> arise over a bankruptcy plan of reorganization.

In re Millenium Seacarriers, Inc., 419 F.3d at 96 (emphasis
supplied)(citation omitted).  See also Mt. McKinley, 399 F.3d at
499.

Core proceedings include "allowance or disallowance of claims against the estate," "determinations of the validity, extent, or priority of liens," "orders approving the sale of property," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims," among other things.  28 U.S.C. § 157(b)(2)(B), (K), (N), (*O*).  Determining whether a dispute regarding contracts is "core" involves considering "(1) whether a contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization."  In re Millenium Seacarriers, Inc., 419 F.3d at 97 (citing In re U.S. Lines, 197 F.3d at 637).  "The latter inquiry depends upon the 'nature of the proceeding.'"  Id. (citation omitted).  "A proceeding's nature can be core if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function."  Id. (citation omitted). Core bankruptcy functions include "fixing the order of priority claims against a debtor, placing the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and administering all property in the bankrupt's possession."  Id.  For example, in a post-bankruptcy petition adversary action between two non-debtors over a pre-petition lease, the Second Circuit determined the action to be core because, among other things, the dispute "was

16

based on rights established in the sale order" and was "uniquely

affected by and inextricably linked to the bankruptcy court's

Sale Order."  In re Petrie Retail, 304 F.3d at 229-30 (citation

omitted).  See also Mt. McKinley, 399 F.3d at 449.

The Adversary Action is a core proceeding, because it is

based on rights established in the Sale Order -- specifically,

whether one contract or a different contract was assumed as part

of the bankruptcy sale.  The Bankruptcy Court has jurisdiction to

interpret its own order in this respect.  The Bankruptcy Court

therefore has subject matter jurisdiction over the Adversary

Action.

Orient's argument that because the Baltic bankruptcy case

was dismissed, the Adversary Action also must be dismissed misses

the mark.  The general rule is

> that related proceedings ordinarily should be dismissed
> following the termination of the underlying bankruptcy
> case.  This general rule favors dismissal because a
> bankruptcy court's jurisdiction over such related
> proceedings depends on the proceedings' nexus to the
> underlying bankruptcy case.  Notwithstanding this
> general rule, however, nothing in the Bankruptcy Code
> requires a bankruptcy court to dismiss related
> proceedings automatically following the termination of
> the underlying case.  Indeed, section 349 of the
> Bankruptcy Code authorizes bankruptcy courts to alter
> the normal effects of the dismissal of a bankruptcy
> case if cause is shown.  Accordingly, we hold that the
> dismissal of an underlying bankruptcy case does not
> automatically strip a federal court of jurisdiction
> over an adversary proceeding which was related to the
> bankruptcy case at the time of its commencement.  The
> decision whether to retain jurisdiction should be left
> to the sound discretion of the bankruptcy court or the
> district court, depending on where the adversary
> proceeding is pending.

In re Porges, 44 F.3d 159, 162 (2d Cir. 1995) (emphasis

17

supplied)(citation omitted).  As the Adversary Action is pending

in the Bankruptcy Court, it is within the discretion of that

court to determine whether to retain jurisdiction over the

action.  "[A] court must consider four factors in determining

whether to continue to exercise jurisdiction: judicial economy,

convenience to the parties, fairness and comity."  Id.  Judicial

economy and convenience to the parties are both served by the

Bankruptcy Court's interpretation of its own Sale Order due to

its familiarity with the facts.  Fairness and comity are not

affected either way.  Thus, the Bankruptcy Court is well within

its discretion to retain jurisdiction over the Adversary Action.


Injunction

     Orient also argues that the Injunction issued by the

Bankruptcy Court against it on July 31, 2002 must be vacated.  In

addition to attacking the court's jurisdiction to issue the

Injunction, Orient also argues that: the Bankruptcy Court failed

to find specific facts, the Remand Order's consideration of

mounting legal fees as "irreparable harm" was improper, Jamaica

did not establish irreparable harm, the injunction order violates

the requirements established for an anti-suit injunction set

forth in China Trade Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33,

35-36 (2d Cir. 1987), and the injunction is overly broad, among

other things.

     "A party seeking a preliminary injunction must demonstrate

18

(1) irreparable harm in the absence of the injunction and (2)
either (a) a likelihood of success on the merits or (b)
sufficiently serious questions going to the merits to make them a
fair ground for litigation and a balance of hardships tipping
decidedly in the movant's favor." MyWebGrocer, LLC v. Hometown
Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (citation omitted).
While the Remand Opinion makes findings of fact and conclusions
of law regarding the first prong of the preliminary injunction
standard, it makes no findings of fact regarding the second prong
-- it merely restates the parties' arguments made in their motion
papers.  Without complete findings on how each prong of the
preliminary injunction test was met, it would be ill-advised to
consider the remainder of the parties' arguments at this stage.
The Injunction remains in place because, as the Second Circuit
noted in this case, it "appears necessary to protect the
Bankruptcy Court's jurisdiction." In re Millenium Seacarriers,
Inc., 54 Fed. Appx. At 336.


## CONCLUSION

The Dismissal Appeal, docket number 05 Civ. 2711, is
dismissed, and the Clerk of Court shall close this case.  The
Remand Appeal, docket number 04 Civ. 6482, is affirmed on the
question of subject matter jurisdiction, and is remanded to the
Bankruptcy Court for further findings of fact and conclusions of
law to address the likelihood of success on the merits of the
claims presented by Jamaica.  Given the significant passage of

time, the Bankruptcy Court may also consolidate its findings with a trial on the merits; and should make every effort to do so. In the event that the Bankruptcy Court does not issue findings of fact and conclusions of law by December 23, 2005, any party to these proceedings may file a motion to withdraw the reference.

Dated:    New York, New York
          September 28, 2005

                                    _____
                                           DENISE COTE
                                    United States District Judge